# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **Bernard Block and Alvin W. Block & Associates,** )<br>Plaintiffs, )<br>)<br>v. )<br>)<br>**Andrew Rosenberg,** )<br>Defendant. ) | No. 20 C 1053<br><br>Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Plaintiffs' motion for summary judgment [66] is denied. The parties are directed to confer and file within 14 days of the date of entry of this order a statement setting forth three proposed trial dates in October 2022. The statement shall also indicate the estimated length of trial.

## STATEMENT

**Facts**

Andrew Rosenberg served as Chief Executive Officer for and was a majority shareholder in Style Management Co., Inc., a taxi-medallion management company that leases vehicles to taxi drivers. Bernard Block is an attorney at the law firm of Alvin W. Block & Associates.[1] Block has over 30 years' experience representing banks and businesses in matters related to city and state licensing, secured lending, and business litigation. Block served as Chairman of the Revenue and Finance subcommittee for the City of Chicago Department of Business Affairs and Consumer Protection, an organization that regulates the taxi industry. He has established a practice providing business and legal advice to clients in the taxi-medallion industry and is well known within it.

Between 2012 and 2014, Block and his firm acted as Rosenberg's attorneys at least seven times in taxi and medallion-related matters; the parties did not have a written retainer agreement on those matters. Rosenberg states that he came to trust and rely on Block to act in his best interests.

In 2014, Sal Chierico at Capital One sent Rosenberg an email, informing him that Capital One had decided not to finance Chicago medallions, but that it would renew the over $31,000,000.00 in loans to Rosenberg's companies for an additional year. In February 2015, Block and Rosenberg conferred about Rosenberg's selling his medallions. During the conversation, the parties discussed the possibility of Block's representing Rosenberg in the loan

---

[1] Unless otherwise noted, the Court refers to Block and the law firm as "Block."

refinancing negotiations with Capital One. Block asserts that he and Rosenberg discussed that his fee would be a fixed percentage of the amount financed, which he refers to as a success fee, with a portion of the hourly fees being credited against that amount. According to Rosenberg, he and Block had a general discussion, but not an agreement, about a bonus to Block if he succeeded in obtaining better loan terms from Capital One that generated sufficient funds from which a bonus could be paid.

On February 11, 2015, Block sent Rosenberg an email stating as follows: "[T]his is the agreement we spoke of yesterday. The schedule needs to be completed but we can do that here and forward it, we do not need the schedule to begin, just the retainer agreement so I am authorized to make the calls and representations. Call with any questions . . . ." The email attached a contract titled "Attorney & Client Services Agreement." (Compl., Dkt. #1-1, Ex. A.) A signature line for "Client," which is defined in the Agreement as Rosenberg and Rosenberg's companies, collectively, includes Rosenberg's signature.[2] The scope of the engagement was that Block would assist Rosenberg in refinancing the Capital One loans. The Agreement further provides that if Block was able to accomplish the refinancing, Rosenberg would pay a "Success Fee" of 2% of the "Aggregate financed amount." As further stated in the Agreement, "[i]n order to induce the Firm to undertake representation of Client [Rosenberg and all corporate entities he controlled], [Rosenberg] hereby personally and unconditionally guarantee[s] full payment of all amounts invoiced." According to Rosenberg, he did not give any thought to the capacity in which he was signing the Agreement because he did not read it before signing it. Rosenberg asserts that his "relationship of trust" with Block caused him to reasonably believe he did not have to review the Agreement prior to signing it.

Rosenberg asserts that he was handling the negotiations with Capital One while Block was to document the agreement and "handle the details" once Capital One committed to refinance the loan. The parties dispute which one had a more crucial role in the negotiations with Capital One. Rosenberg and his companies ultimately entered into loan modifications with Capital One, which resulted in the extension of $31,055,500.00 of loans to Rosenberg and his companies. Block claims that after being paid $3,083.39, Rosenberg continues to owe him $618,071.61 as a success fee.

**Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). The party seeking summary judgment has the initial burden of showing that there is no genuine

---

[2] The companies were to have been identified in "Schedule A," which was not attached to the agreement sent to Rosenberg.

dispute and that it is entitled to judgment as a matter of law.  *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.

**Analysis**

Block alleges one count of breach of contract against Rosenberg.  "Under Illinois law, the elements of a breach of contract cause of action are (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages."  *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 579 (N.D. Ill. 2020) (internal quotation marks and citation omitted).  Block moves for summary judgment, contending that no genuine issue of material fact precludes judgment in his favor.

The only matter the parties agree on is that Rosenberg retained Block to assist with the refinancing of the Capital One loans at issue.  Virtually every other material fact is contested, including which party actually renegotiated the loans, the fee agreed to, and the scope of the retention.  Rosenberg testified that in their February 2015 discussion about refinancing the Capital One loans, the parties "had no conversations about finances or money to [his] recollection."  (12/21/20 Rosenberg Dep., Dkt. # 68-6, at 132.)  Further, according to his post-deposition declaration, the parties did not agree to any terms during their telephone call in February, other than that Block was going to represent Rosenberg.  Rosenberg asserts that he never knowingly agreed to a bonus or success fee, Block never advised Rosenberg that the agreement contained a provision for a success fee, and Block never explained the agreement orally or in writing.  Block, on the other hand, testified during his deposition that he had a "general nonspecific recollection" of his discussion with Rosenberg regarding the issue of a success fee, which was that "it was going to be, you know, a percentage of the financed amount if we could work this out and it was – as a success fee; and if we charged hourly, there was going to be a credit for 90% of the hourly fee."  (Block Dep., Dkt. # 71, at 16.)[3]  When asked if he discussed with Rosenberg what a two-percent success fee would mean in the context of the relevant representation, Block responded, "Again, I don't have specific recollections of the conversation, but I -- you know, speculating, but I am sure we discussed that in detail."  (Block Dep., Dkt. # 71, at 17.)

Despite the parties' different recollections regarding their conversation on Block's representation, it is undisputed that Rosenberg admits that he could have, but did not, read the

---

[3]  In his post-deposition declaration, Block states that:

> Rosenberg expressed serious concerns about difficulties he was experiencing in securing refinancing of a group of loans and our discussions about fixing attorney fees based on a percentage of the refinancing he might be able to secure by relying on my business and legal consulting led me to prepare a fee agreement that included a contingency "success fee."

(Block Decl., Dkt. # 68-3, ¶ 7.)

3

agreement before signing it. "[A] party that signs an agreement is charged with knowledge of its contents whether or not the party actually read the entire agreement." *Villasenor v. Am. Signature, Inc.*, No. 06 C 5493, 2007 WL 2025739, at *5 (N.D. Ill. July 9, 2007). Rosenberg, however, asserts an affirmative defense of breach of fiduciary duty, which is a valid defense to breach of contract. *Goulding v. Osceola Gold, Inc.*, No. 16 C 4860, 2017 WL 690549, at *5 (N.D. Ill. Feb. 21, 2017) ("[B]reach of fiduciary duty is a proper affirmative defense to contract and quasi-contract claims . . . .").[4]

To prevail on a claim for breach of fiduciary duty under Illinois law, a plaintiff must show that "(1) a fiduciary duty existed, (2) that duty was breached, and (3) the breach of the duty proximately caused damages." *T.S. v. Twentieth Century Fox Television*, No. 16 C 8303, 2021 WL 2376017, at *13 (N.D. Ill. June 10, 2021). "[T]he existence of an attorney-client relationship creates a fiduciary relationship between those parties as a matter of law." *NPF Racing Stables, LLC v. Aguirre*, No. 18 C 6216, 2021 WL 1379494, at *4 (N.D. Ill. Apr. 12, 2021). This principle is relevant here because at least one Illinois court has stated that "[a] presumption of undue influence arises when an attorney enters into a transaction with his client during the existence of the fiduciary relationship." *See Lustig v. Horn*, 732 N.E.2d 613, 619 (Ill. App. Ct. 2000). The burden is then on the attorney to rebut this presumption by clear and convincing evidence by showing that "(1) he made a full and fair disclosure to [his client] of all the material facts affecting the transaction and (2) the transaction was fair." *Id*. Rosenberg asserts that Block made no such disclosure and that the transaction was not fair.

In response, Block relies on *Maksym v. Loesch*, 937 F.2d 1237, 1243 (7th Cir. 1991), in which the Seventh Circuit addressed a case with facts and claims similar to those at issue here and stated as follows:

> Most of the lawyer undue-influence cases involve what might be termed collateral dealings between lawyer and client—loans, sales, a will naming the lawyer as a beneficiary, and so forth. But not all. *Anderson* and *Durr* involved fee contracts, and it is in *Durr* that we read that "a presumption of undue influence arises when an attorney enters into a transaction with his client during the existence of the fiduciary relationship." The word "during," however, deserves emphasis. In both *Anderson* and *Durr* the challenged fee contract had been made long after the lawyer-client relationship had been established. *Fiduciary law does not send the dark cloud of presumptive impropriety over the contract that establishes the fiduciary relationship in the first place and fixes the terms of compensation for it.* "The courts of Illinois have given particular attention to contracts made or changed *after* the relationship of attorney and client has been established; it is generally held that *such* contracts are presumptively fraudulent." Most fiduciary

---

[4] While Rosenberg's sixth affirmative defenses is labeled "fraudulent inducement," it encompasses a claim that Block breached his fiduciary duty, and the Court construes it as such. (Answer & Aff. Defenses, Dkt. # 20, ¶¶ 24-31 (asserting that Block, as Rosenberg's lawyer, had an affirmative duty to document the parties' fee agreement in clear language that properly reflected the agreement between the parties, and in failing to do so, Block breached his fiduciary obligations to Rosenberg).)

relationships are established by contract and are not eleemosynary, yet the contracts establishing them are held valid without the court's imposing on the lawyer or other fiduciary the difficult burden of demonstrating that he made full disclosure of the terms of the contract and that those terms were "fair," whatever exactly that means. Cases so holding with respect to retainer agreements made at the outset of the lawyer-client relationship include *In re Estate of Harnetiaux,* 91 Ill. App. 2d 222, 2238, 234 N.E.2d 81, 84 (1968), and *Sokol v. Mortimer,* 81 Ill. App. 2d 55, 60–63, 225 N.E.2d 496, 499-500 (1967). We have found no recent cases, but perhaps only because the principle is so well established and so sensible.

*Id.* at 1242 (certain internal citations omitted and initial emphasis added).

Block asserts that because the Agreement was entered into at the outset of the representation, there is no presumption of impropriety and he has no burden, in this context, to demonstrate the Agreement's fairness. *Id*. at 1241 ("[T]he failure of one party to explain the terms of a written contract to the other before the other signs is not fraud, or undue influence, . . . even if the contract creates a fiduciary relationship."). The parties, however, dispute whether a fiduciary relationship existed at the time Block sent the Agreement to Rosenberg. Rosenberg notes that Block had represented Rosenberg on seven different occasions in previous years, though none were medallion-financing matters, and contends that he trusted Block as his lawyer. Block, on the other hand, asserts that "the narrative that they had an involved, 'continuing' relationship is false," noting that his firm spent only 33.7 hours representing Rosenberg between 2012, when Block first represented Rosenberg, to 2014. (Pls.' Reply, Dkt. # 79, at 3.) Accordingly, because a genuine issue of material fact exists as to whether a fiduciary relationship was present, summary judgment on the breach-of-fiduciary-duty affirmative defense is not appropriate.

The Court could end its analysis here, but in the interest of completeness, it addresses the final two matters raised by Rosenberg. Rosenberg claims that the contract is ambiguous, positing numerous purported ambiguities precluding summary judgment, including:

> (a) The many signature lines in the Agreement, most of which are unsigned. Was Rosenberg signing individually or on behalf of his companies? (b) What is the definition of "client"? Was it the Rosenberg entities or was it Rosenberg and his entities? . . . (c) What is the definition of "success fee"? The Agreement bases it on the "Aggregate financed amount" but does not define the term to include refinancing by Rosenberg or his entities . . . (d) Who is the "seller" referenced in the Agreement? . . . (e) Where is the Schedule? It was not included in the Agreement Rosenberg was asked to sign . . . (f) Which are the Rosenberg entities that were supposed to be included in the Agreement? Why were they not identified or even joined as parties to this litigation?

(Def.'s Resp., Dkt. # 74, at 14.)

"If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning." *Camelart Ltd. v. Stonex Grp., Inc.*, No. 20 C 7707, 2021 WL

5

2311967, at *3 (N.D. Ill. June 7, 2021) (citation and internal quotation marks omitted). "However, if the language in the contract is susceptible to more than one meaning, it is ambiguous and the court can consider extrinsic evidence to determine the parties' intent." *Id*. As an initial matter, Rosenberg cannot simply point to irrelevant terms in the agreement that he deems ambiguous; the ambiguity must relate to a material term of the contract. Moreover, Rosenberg remains firm in his position that he did not read the contract before signing. If that's the case, then he cannot attempt to rely on a purported ambiguity in a contract term to evade summary judgment as to the parties' intent. As noted, the law is, generally, that if one (particularly an experienced businessperson) has the opportunity to read a contract and signs it, then that person is bound to the contract's terms. Asserting afterwards that the terms are ambiguous is simply illogical under such circumstances.

In any event, Rosenberg's contentions regarding ambiguity lack merit. In terms of the capacity in which Rosenberg was signing the Agreement, the first sentence states: "Andrew Rosenberg, both individually and jointly, and on behalf of . . . all corporate entities controlled or administered by Andrew Rosenberg, with outstanding loans (collectively referred to herein as "Client" or "Company") . . . ." (Compl., Dkt. #1-1, Ex. A, at 1.) The language is clear that Rosenberg was signing both on behalf of himself and all entities controlled by him with outstanding loans, and that Rosenberg and the entities were the "client." The fact that other blank signature lines existed does not negate or inject ambiguity into the express terms of the contract as executed by Rosenberg, and he fails to point to any case law in support of such a position. The Court further agrees with Block that the fact that the schedule listing the companies that were encompassed in the retention agreement is not actually attached to the agreement, as indicated, does not void the contract. Rosenberg does not dispute that Block tendered a closing certificate to Rosenberg in 2016 that listed the entities for which financing had been obtained and that he and the companies entered into loan modifications with Capital One, as contemplated by the Agreement.

Rosenberg also argues that the term "success fee" is ambiguous and that the term "aggregate financed amount" is undefined. The relevant provision states as follows:

> In addition [to the hourly rates], we shall charge, upon closing of a loan, loan modification or other related transaction of some or all of the loans to client, as referenced herein, or other related benefit thereof, the following:
>
> Success Fee: 2% of Aggregate financed amount (defined below)

(Compl., Dkt. # 1-1, Ex. A, at 2.) In the following section titled "Definitions," the Agreement states: "'Aggregate Financed Amount' shall include any cash or securities or other consideration tendered by client or debt assumption or restructuring of any of the seller's debt." (*Id*. at 3.) Rosenberg argues conclusorily that the definition of "aggregate financed amount" does not include refinancing. This is simply incorrect—the definition expressly includes any debt assumption or restructuring of the debt. Rosenberg also notes that while the definition refers to "seller's debt," neither Rosenberg nor his companies were sellers. Block acknowledges that the use of the term "seller" instead of "client" is inaccurate, but the Court agrees that the mistaken reference does not render the definition ambiguous. Importantly, Rosenberg simply points out

6

the mistake but does not explain how it undermines the intent of the parties' agreement. Rosenberg's contentions regarding ambiguity fail to ward off summary judgment.

Rosenberg's final argument, however, has traction. Rosenberg asserts that the success fee is a contingency-fee arrangement that is subject to close scrutiny by the Court for fairness. In *Pocius v. Halvorsen*, 195 N.E.2d 137 (Ill. 1963), "the Illinois Supreme Court held that contingent fee contracts are always subject to the supervision of the courts, whether or not they are entered into during the attorney-client relationship, and will be enforced as written only if they are reasonable." *McCracken & McCracken, P.C. v. Haegele*, 618 N.E.2d 577, 582 (Ill. App. Ct. 1993). Illinois Rule of Professional Conduct 1.5 provides that a "lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." The same Rule states that:

> The factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

Ill. Sup. Ct. R. 1.5(a)(1-8). According to Block, "all of the factors align in favor of the fee being reasonable, but the contingent nature of the fee is most important." (Pls.' Mem. Supp. Mot. Summ. J., Dkt. # 67, at 9.) Block contends that he "accepted the uncertainty of the engagement (a client unable to secure refinancing for the entities that held the taxi medallions that were the core of the business) in exchange for the possibility of gaining the success fee." (*Id*.) He goes on to state that "but for [his] expertise in presenting the financial status of Rosenberg and negotiating the refinancing of the Maturing Loans, Capital One might [have] declared the loans in default on their maturity dates, making it unlikely that [Block] would be positioned to recover hourly fees." (*Id*.)

As an initial matter, the Court cannot decide the reasonableness of the fee when Block discusses only one factor – the contingent nature of the fee. Moreover, Rosenberg contends that he did most, if not all, of the negotiating with respect to the refinancing and that Block's role was primarily to document the deal. The contradictory testimony creates an issue of fact as to the role that Block's expertise and skill played in the instant representation. In addition, regarding the time and labor required, Block's hourly-rate billing totaled $41,949.00, as compared to the approximately $620,000.00 he seeks as a success fee, and reflects only one meeting with Capital One (though Block asserts the bill was underinclusive and that he had at least two meetings with Capital One). Nor does Block discuss the fee customarily charged in the locality for similar legal services. Finally, as to the nature and length of the professional relationship with Rosenberg, Block himself dismisses Rosenberg's assertion that he had a relationship of trust with Block and argues that the "narrative" of an "involved or continuing" relationship between the

two was "false." All these differences demonstrate that an issue of fact remains as to the reasonableness of the success fee.

For the reasons stated above, Block's motion for summary judgment is denied.

Date: June 29, 2021

**Ronald A. Guzmán**
**United States District Judge**